1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELE ANNE B.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. C20-5635-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her application for Supplemental Security Income (SSI).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1973, has a limited education, and has worked as a cannery worker. AR 576-77.  Plaintiff was last gainfully employed in 2019.  AR 564.

Plaintiff applied for SSI benefits on February 2, 2015, and alleges disability as of the application date.  AR 564.  Plaintiff's applications were denied initially and on reconsideration,

and Plaintiff requested a hearing.  AR 74, 83, 120-21. After the ALJ conducted a hearing in July

2017, the ALJ issued a decision finding Plaintiff not disabled.  AR 9-25.  The Appeals Council

denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final

decision.  AR 1-3.  On appeal to this Court, based on the parties' stipulation, the case was

remanded for further administrative proceedings.  AR 647-48.  On remand, after conducting a

hearing in February 2020, the ALJ issued a decision finding Plaintiff not disabled from the

February 2015 application date through the March 2020 decision date.  AR 561-78.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since the application date.

**Step two**:  Plaintiff has the following severe impairments: obesity, osteoarthritis of the bilateral knees, arthritis of the acromioclavicular joint (left shoulder) status post labrum tear, lumbago, bilateral sciatica, post-traumatic stress disorder (PTSD), depressive disorder, and anxiety disorder.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**:  Plaintiff can perform light work, occasionally balancing, stooping, crouching, kneeling, or climbing ramps and stairs, and never crawling or climbing ropes, ladders, or scaffolds.  She can frequently reach forward and laterally, and occasionally reach overhead.  She must be able to change positions between sitting and standing in 20 to 30 minute intervals.  She must avoid concentrated exposure to hazards.  She can do simple, routine tasks with superficial contact with coworkers and the public.

**Step four**:  Plaintiff cannot perform past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR at 561-78.  Plaintiff appealed this final decision of the Commissioner to this Court.  Dkt. 1.

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

1

**LEGAL STANDARDS**

2

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3

security benefits when the ALJ's findings are based on harmful legal error or not supported by

4

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

5

2005). As a general principle, an ALJ's error may be deemed harmless where it is

6

"inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104,

7

1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to

8

determine whether the error alters the outcome of the case." *Id.*

9

Substantial evidence is "more than a mere scintilla. It means - and means only - such

10

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

12

747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving

13

conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v.*

14

*Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record

15

as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

16

Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

17

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

18

must be upheld. *Id.*

19

**DISCUSSION**

20

Plaintiff argues the ALJ erred by rejecting her testimony and five medical opinions. The

21

Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial

22

evidence, and should be affirmed.

23

1

**A.  The ALJ Did Not Err in Discounting Plaintiff's Testimony**

2

Where, as here, an ALJ determines a claimant has presented objective medical evidence

3

establishing underlying impairments that could cause the symptoms alleged, and there is no

4

affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to

5

symptom severity by providing "specific, clear, and convincing" reasons supported by

6

substantial evidence.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

7

The ALJ discounted Plaintiff's testimony of back, knee, and shoulder pain, and difficulty

8

concentrating and interacting with people, based on inconsistent statements, minimal and

9

conservative treatment, unremarkable clinical findings, and her activities.  AR 570-74.

10

**1.    Inconsistent Statements**

11

"Factors that an ALJ may consider in weighing a claimant's credibility include …

12

inconsistencies in testimony or between testimony and conduct[.]"  *Orn v. Astrue*, 495 F.3d 625,

13

636 (9th Cir. 2007).

14

In October 2019, Plaintiff told a provider she "was lifting 20 lb boxes all day" when

15

working at a cannery.  AR 938.  During the February 2020 hearing, Plaintiff testified her work at

16

the cannery involved lifting boxes that weighed "nine or ten pounds."  AR 593.  The ALJ

17

reasonably concluded this inconsistency undermined the reliability of Plaintiff's reports of her

18

ability to lift.  Plaintiff argues "this job caused her injury" and she "only attempted this job for a

19

short time."  Dkt. 24 at 17.  Regardless, Plaintiff's inconsistent statements render her testimony

20

unreliable.  At the July 2017 hearing, Plaintiff testified she could lift "ten pounds, maybe."  AR

21

51.  The ALJ permissibly found Plaintiff's testimony on lifting limitations unreliable based on

22

inconsistent statements.

23

1    In July 2018, Plaintiff told a provider she "walks every where she goes … 3-4 times a

2    week, 30-40 min[utes] or so each time." AR 861.  In May 2019, Plaintiff told a provider she was

3    using a "treadmill … about 1-2 hours each time." AR 928.  The ALJ found these treatment notes

4    inconsistent with Plaintiff's report she could only walk one block before resting for five to ten

5    minutes.  AR 264.  Plaintiff argues these statements are not inconsistent because she may still

6    rest after one block of walking.  However, the ALJ reasonably inferred the treatment notes meant

7    Plaintiff walked 30 to 40 minutes, or used a treadmill one to two hours, without stopping.  *See*

8    *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he

9    Commissioner's findings are upheld if supported by inferences reasonably drawn from the

10    record.").  Nothing in the treatment notes suggests Plaintiff took substantial breaks during her

11    exercise.  The ALJ permissibly rejected Plaintiff's testimony of walking limitations based on

12    inconsistent statements.

13        The Commissioner identifies two further potential inconsistencies, which the Court finds

14    unpersuasive.  First, the Commissioner points to potential inconsistencies in Plaintiff's

15    statements about the exact dates when she was "clean and sober" and when she relapsed.  Dkt.

16    28 at 16.  However, the Commissioner makes no clear connection to how this would undermine

17    any limitations Plaintiff reported.  "[S]ubjective symptom evaluation is not an examination of an

18    individual's character."  Soc. Sec. Rul. 16-3p, 2017 WL 5180304 at *2 (S.S.A. 2017); *see also*

19    *id.* at *11 ("Adjudicators must limit their evaluation to the individual's statements about his or

20    her symptoms and the evidence in the record that is relevant to the individual's impairments.").

21    Instead, an ALJ must perform a symptom by symptom evaluation.  *Id.* at *8 ("We will explain

22    which of an individual's symptoms we found consistent or inconsistent with the evidence").

23

1    Second, the Commissioner contends Plaintiff's testimony she "can't even lift" her arms is

2    inconsistent with her testimony that she was able to take things out of a cupboard.  Dkt. 28 at 17.

3    However, in context, these statements were not inconsistent.  At the 2020 hearing, Plaintiff

4    demonstrated she could bring her arms chest-high and stated, "I can't even lift 'em up,"

5    obviously referring to an inability to move them any higher.  AR 596.  Plaintiff then testified she

6    could "grab stuff out of the cupboard," but nothing in the record suggests she was referring to

7    cupboards above chest height.  AR 597.  These were not inconsistent statements.

8    The Court concludes inconsistent statements were a clear and convincing reason to

9    discount Plaintiff's testimony on lifting and walking limitations.

10    **2.    Minimal or Conservative Treatment**

11    An ALJ may discount the claimant's testimony when the "'level or frequency of

12    treatment is inconsistent with the level of complaints.'"  *Molina*, 674 F.3d at 1113 (quoting

13    Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *7 (July 2, 1996) (superseded by

14    SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), which retains language providing ALJ may

15    discount claimant's testimony "if the frequency or extent of the treatment sought by an

16    individual is not comparable with the degree of the individual's subjective complaints."))  An

17    ALJ may also properly discount claimant testimony when the record shows the claimant

18    "responded favorably to conservative treatment."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40

19    (9th Cir. 2008).

20    The ALJ found Plaintiff sought treatment for her shoulder only three times in 2015 and

21    2016.  AR 572.  The Commissioner contends there were only three more instances of shoulder

22    treatment through 2019.  Dkt. 28 at 18.  Plaintiff does not address this paucity of treatment.

23    Minimal treatment was a clear and convincing reason to discount Plaintiff's testimony of

1 | debilitating shoulder impairments.  Moreover, Plaintiff reported that diclofenac, which the ALJ

2 | found to be conservative treatment, a finding Plaintiff does not challenge, "helps significantly"

3 | with shoulder pain.  AR 821; AR 572.  This favorable response to conservative treatment further

4 | bolsters the ALJ's discounting of Plaintiff's shoulder testimony.

5 |      The ALJ also found minimal treatment for Plaintiff's knee impairments, with only a

6 | handful of visits throughout the relevant period.  AR 572-73.  Plaintiff again fails to address the

7 | paucity of treatment.  Minimal treatment was a clear and convincing reason to discount

8 | Plaintiff's testimony of debilitating knee impairments.

9 |      The Court concludes minimal, conservative treatment was a clear and convincing reason

10 | to discount Plaintiff's testimony on shoulder and knee impairments.

### 3.    Medical Evidence

12 |      "Contradiction with the medical record is a sufficient basis for rejecting a claimant's

13 | subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir.

14 | 2008).  However, mere "lack of medical evidence cannot form the sole basis for discounting pain

15 | testimony…."  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Much of the medical

16 | evidence the ALJ cited was merely unsupportive.  For example, that Plaintiff sometimes

17 | exhibited a normal gait across a doctor's office does not contradict an inability to walk more than

18 | one or two blocks before needing to rest.  AR 788 (normal gait), *but see* AR 385 ("limp"); AR 50

19 | (can walk up to two blocks).

20 |      However, repeated clinical findings of concentration "within normal limits" contradicted

21 | Plaintiff's testimony of poor concentration.  AR 373, 785, 830; AR 43 ("I have … a really hard

22 | time concentrating").  Plaintiff argues the clinical findings included abnormal insight and

23 |

abstract thought.  Dkt 24 at 17.  However, these are far less relevant than the clinical findings of normal concentration, which directly contradicted Plaintiff's testimony.

Plaintiff contends the ALJ erred by failing to incorporate into the RFC her testimony she needed to elevate her legs.  Dkt. 24 at 18.  Plaintiff testified she elevated her legs due to "superficial thrombosis."  AR 56.  The ALJ found "superficial thrombophlebitis" was a non-severe impairment because a treatment provider "recommend[ed] the claimant stay physically active to prevent recurrence, which shows it causes no physical limitations" and contradicts Plaintiff's testimony of a need to elevate.  AR 566-67.  Plaintiff's briefing does not address this medical evidence.  Contradiction with the medical record was a clear and convincing reason to discount Plaintiff's testimony regarding superficial thrombophlebitis.

The Court concludes contradiction with the medical record was a clear and convincing reason to discount testimony of poor concentration and a need to elevate her legs.

### 4.    Activities

An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills.  *Orn*, 495 F.3d at 639.

Plaintiff testified she spends her time doing puzzles.  AR 47.  The ALJ found this inconsistent with her testimony of difficulty concentrating, a finding Plaintiff does not challenge.  AR 569.  Conflict with activities was a clear and convincing reason to discount Plaintiff's concentration testimony.

Plaintiff testified she socialized with a few friends, her children, and a friend's children.  AR 47, 599.  She used public transportation.  AR 262, 348, 827.  The ALJ found these activities

1    contradicted her testimony that her mental impairments cause her to isolate.  AR 598.  Plaintiff's

2    activities were a clear and convincing reason to discount her testimony of isolation.

3        The Court concludes conflict with Plaintiff's activities was a clear and convincing reason

4    to discount Plaintiff's testimony of isolating and difficulty concentrating.

5                    **5.    Summary**

6        The ALJ provided clear and convincing reasons to discount Plaintiff's testimony.

7    Inclusion of any erroneous reasons was harmless error.  *See Carmickle.*, 533 F.3d at 1163

8    (inclusion of erroneous reasons to discount claimant's testimony was harmless because

9    "remaining valid reasons supporting the ALJ's determination are not 'relatively minor'").  The

10    Court concludes the ALJ did not err by discounting Plaintiff's testimony.

11        **B.  The ALJ Erred in Evaluating Medical Opinion Evidence**

12        A treating physician's opinion is generally entitled to greater weight than an examining

13    physician's opinion, and an examining physician's opinion is entitled to greater weight than a

14    nonexamining physician's opinion.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  An

15    ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving

16    "clear and convincing" reasons.  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  Even if

17    a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

18    only reject it by stating "specific and legitimate" reasons.  *Id.*  The ALJ can meet this standard by

19    providing "a detailed and thorough summary of the facts and conflicting clinical evidence,

20    stating his interpretation thereof, and making findings."  *Id.* (citation omitted).  "The ALJ must

21    do more than offer his conclusions.  He must set forth his own interpretations and explain why

22    they, rather than the doctors', are correct."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

23

1   "Only physicians and certain other qualified specialists are considered '[a]cceptable

2   medical sources.'"  *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in

3   original); *see* 20 C.F.R. § 416.902(a), (i), (j).  An ALJ may reject the opinion of a non-acceptable

4   medical source, such as a nurse practitioner in this case, by giving reasons germane to the

5   opinion.  *Ghanim*, 763 F.3d at 1161.

6         **1.**      **Treating Providers Anthony Reyes, M.D., and Ema Ando, ARNP**

7         In April 2015, Dr. Reyes opined Plaintiff was limited to sedentary work due to

8   "secondary back pain & knee pain."  AR 328-29.  In January 2018, Ms. Ando listed diagnoses of

9   "chronic back pain [and] bilat[eral] shoulder pain" and opined Plaintiff was limited to sedentary

10  work.  AR 771-72.  In November 2019, Ms. Ando listed diagnoses of "chronic venous

11  insufficiency [and] arthritis shoulder bilat[erally]" and opined Plaintiff was limited to sedentary

12  work.  AR 816-17.  The ALJ gave these opinions "little weight" because they were inconsistent

13  with "extremely minimal conservative treatment" for Plaintiff's back, knee,[3] and shoulders.  AR

14  576.

15        Where treatment is likely to be successful, a claimant's failure to avail herself of it

16  implies her complaints are "unjustified or exaggerated," because "a person's normal reaction is

17  to seek relief from pain."  *Orn*, 495 F.3d at 638.  The implication is unclear for a medical

18  opinion, however, as the medical source has no control over whether the claimant seeks

19  treatment.  Here, the ALJ failed to explain how minimal treatment undermined the medical

20  opinions.  As discussed above, Plaintiff sought little treatment for her shoulders or knee.  The

21  ALJ found "only one treatment visit for her alleged back impairment."  AR 576.  Plaintiff

22

23  [3] The ALJ referred to "the claimant's and shoulder conditions, and … back impairment."  AR 576.  Because the ALJ elsewhere in the decision discussed minimal knee as well as shoulder treatment, the Court infers the ALJ made a typographical error, leaving out the word "knee" after "claimant's."  *See* AR 572.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 10

1    identifies five.  In April 2015, February 2017, and January 2018, Plaintiff reported back pain and

2    her providers assessed back impairments based on clinical findings such as tenderness and

3    decreased range of motion.  AR 333-35, 386-88, 775-79.  In May and June 2015, Plaintiff

4    reported back pain at appointments for other reasons, and providers did not assess her back.  AR

5    406-407, 413-14.  Regardless of the number of treatment visits, the ALJ failed to explain why

6    limited treatment undermined Dr. Reyes' or Ms. Ando's opinions.

7        Ms. Ando based her opinions on extensive clinical findings, including several positive

8    tests for shoulder dysfunction.  *See* AR 778 ("Right shoulder: AC joint tenderness, supraspinatus

9    tenderness … Positive neers, positive gerber lift off, positive empty can"), 823 ("Empty can –

10   pos bilat[,] Pain with external rotation – pos bilat[,] neers – pos bilat").  On this record,

11   Plaintiff's failure to seek treatment was not a germane reason to discount Ms. Ando's opinions

12   based on shoulder impairments.

13       Dr. Reyes' opinions were based on back and knee impairments, which were also

14   supported by clinical findings.  *See, e.g.*, AR 335 (decreased lumbar range of motion), 385 (knee

15   tenderness).  Plaintiff's failure to seek treatment was not a specific and legitimate reason to

16   discount Dr. Reyes' opinions.

17       The Commissioner offers several other reasons to discount Dr. Reyes' and Ms. Ando's

18   opinions.  Dkt. 28 at 4-5.  The Court reviews the ALJ's decision "based on the reasoning and

19   findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the

20   adjudicator may have been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225

21   (9th Cir. 1995).  The Commissioner's contention is thus an improper *post hoc* argument upon

22   which the Court cannot rely.

23       The Court concludes the ALJ erred by discounting Dr. Reyes' and Ms. Ando's opinions.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 11

1

2.      **State Agency Nonexamining Physician James Williams, M.D.**

2

In September 2015, Dr. Williams opined Plaintiff could stand and/or walk two hours per

3

day, and could only reach to the front or side occasionally with the left arm due to shoulder pain.

4

AR 92-93.  The ALJ gave these opinions "little weight" because they were "based upon a finding

5

that Dr. Reyes' unsupported opinion should be accorded great weight" and because they were

6

inconsistent with Plaintiff's "minimal conservative treatment," the same reason given to discount

7

Dr. Reyes' opinions.  AR 574-75.  As discussed above, Dr. Reyes' opinions were supported by

8

objective medical evidence and the ALJ erred by discounting them.

9

The ALJ also discounted Dr. Williams' opinions as inconsistent with Plaintiff's ability to

10

"walk up to 40 minutes, and … wor[k] out for up to two hours at a time."  AR 575.  The ALJ

11

reasonably inferred Plaintiff would not walk on a treadmill for two hours if she was then unable

12

to stand or walk for the rest of the day.  Conflict with Plaintiff's activities was a valid reason to

13

discount Dr. Williams' opined limitation to two hours standing/walking per day.

14

In rejecting Dr. Williams' opined reaching limitations, the ALJ noted mixed clinical

15

findings in the shoulders, including "positive x-ray findings of osteoarthritis" and limited range

16

of motion, but full strength.  AR 575.  The ALJ failed to explain how this mixture of abnormal

17

and normal findings contradicts Dr. Williams' opinions.  The Commissioner argues it is the

18

ALJ's role to resolve conflicts in the medical evidence.  Dkt. 28 at 10.  However, the ALJ must

19

do so by providing reasons supported by substantial evidence in the record.  "The ALJ must do

20

more than offer his conclusions.  He must set forth his own interpretations and explain why they,

21

rather than the doctors', are correct."  *Reddick*, 157 F.3d at 725.  "[A]s a lay person, an ALJ is

22

'simply not qualified to interpret raw medical data in functional terms.'"  *Padilla v. Astrue*, 541

23

F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.

1    1999) (per curiam)).  *See also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ,

2    "who was not qualified as a medical expert, should not have gone outside the record to medical

3    textbooks for the purpose of making his own exploration and assessment as to claimant's

4    physical condition.").  The ALJ offered no reason full shoulder strength outweighs findings of

5    osteoarthritis and reduced range of motion.  Simply pointing to these clinical findings was not a

6    valid reason to discount reaching limitations.

7           The Court concludes the ALJ erred by discounting Dr. Williams' opinions on reaching.

8                  **3.      Examining Doctor Wendy Hartinger, Psy.D., and Nonexamining**

9                  **Doctor Melanie Mitchell, Psy.D.**

10          Dr. Hartinger examined Plaintiff four times between April 2015 and November 2019,

11   each time filling out a Psychological/Psychiatric Evaluation form.  Each time, she opined marked

12   limitations in only one or two of the work-related activities on the form.  In April 2015 and

13   March 2016, Dr. Hartinger opined marked limitations in learning new tasks.  AR 349, 371.  In

14   January 2018 and November 2019, Dr. Hartinger opined marked limitations in maintaining

15   punctual attendance and completing a normal work day and week.  AR 783-84, 828-29.

16          The ALJ gave Dr. Hartinger's opinions "little weight" as unsupported by treatment

17   records and her own findings.  AR 576.  Plaintiff contends the ALJ erred by failing to expressly

18   weight Dr. Hartinger's April 2015 opinion.  The Commissioner contends the ALJ mentioned this

19   opinion elsewhere in her decision, and the reasons for discounting the other opinions apply

20   equally well.  *See* AR 566 ("Wendy Hartinger, Psy.D. evaluated the claimant's mental health in

21   April 2015").

22          Dr. Hartinger performed a mental status examination each time, and documented memory

23   deficits in all four examinations.  AR 351, 373, 785, 830.  In April 2015, she observed "tearful"

ORDER REVERSING THE COMMISSIONER'S
DECISION - 13

1    attitude and behavior, dysphoric mood, and fund of knowledge deficits.  AR 350-51.  In March

2    2016, Dr. Hartinger observed "tearful" attitude and behavior, dysphoric mood, abnormally

3    concrete thought processes, and "limited" insight.  AR 372-73.  In January 2018, Dr. Hartinger

4    documented no abnormalities other than memory.  AR 785.  In November 2019, she documented

5    fund of knowledge deficits.  AR 830.

6         In contrast to Dr. Hartinger's clinical findings, Plaintiff's treatment notes reflect almost

7    entirely normal mental status examination results.  Although Plaintiff's mood was sometimes

8    dysphoric, her memory, attitude, insight/judgment, and thought process were all consistently

9    normal.  *See, e.g.*, AR 481, 494, 505, 525, 954, 968, 973, 978, 991, 1006, 1054; *but see* AR 515,

10   986, 995 (poor insight/judgment).  The ALJ reasonably gave more weight to Plaintiff's

11   providers' records, made for purposes of treatment, than Dr. Hartinger's examinations for

12   purposes of assessing disability.  The ALJ reasonably found Dr. Hartinger's opinions of extreme

13   limitations were unsupported by and inconsistent with the almost entirely normal clinical

14   findings in the record.  This was a specific and legitimate reason to discount her opinions.  *See*

15   *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (inconsistency with objective evidence in the

16   medical record is a specific and legitimate reason for rejecting the opinion of an examining

17   doctor).  This reasoning applies equally well to Dr. Hartinger's April 2015 opinion as to the other

18   three opinions.  The Court concludes the ALJ did not harmfully err in discounting Dr.

19   Hartinger's opinions.

20        Dr. Mitchell reviewed Dr. Hartinger's March 2016 report and a 2008 evaluation.  AR

21   374.  Dr. Mitchell concurred with Dr. Hartinger's March 2016 opinion that Plaintiff would have

22   one marked limitation, in learning new tasks.  AR 376.  As with Dr. Hartinger's opinions, the

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 14

1  ALJ reasonably discounted Dr. Mitchell's opinion as unsupported by and inconsistent with the

2  medical evidence.

3        **C.     Scope of Remand**

4        Plaintiff requests remand for an award of benefits because, she argues, Dr. Reyes' and

5  Ms. Ando's limitation to sedentary work, if credited as true, establishes Plaintiff cannot perform

6  work available in significant numbers in the national economy.  Dkt. 24 at 6-7, 15.  This

7  argument reflects "an erroneous reading of [Ninth Circuit] case law, which requires [the Court]

8  to assess whether there are outstanding issues requiring resolution *before* considering whether to

9  hold that the [improperly discredited evidence] is credible as a matter of law."  *Treichler v.*

10  *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).  Plaintiff makes no effort to

11  show all outstanding issues have been resolved.  For example, Dr. Williams' opinion Plaintiff

12  can lift 20 pounds maximum and 10 pounds frequently conflicts with Dr. Reyes' and Ms. Ando's

13  limitation to sedentary work.  *See* AR 92.  The Court concludes enhancement of the record

14  would be useful and, accordingly, remand for further proceedings is appropriate.

15                          **CONCLUSION**

16        For the reasons set forth above, the Commissioner's final decision is **REVERSED** and

17  this case is **REMANDED** for further administrative proceedings under sentence four of 42

18  U.S.C. § 405(g).  On remand, the ALJ should revaluate Dr. Reyes', Ms. Ando's, and Dr.

19  Williams' opinions, reassess the RFC as appropriate, and proceed to step five as necessary.

20        Dated this 15th day of June, 2021.

21

22                          S. KATE VAUGHAN
                           United States Magistrate Judge
23